## WOODRUFF v. AUTO OWNERS INSURANCE CO.

1. INSURANCE—DEFINITION OF "EXPIRATIONS."

> In the insurance agency field the term "expirations" is in effect a copy of the policy issued to the insured, which contains the date of issuance, name of the insured, expiration, amount, premiums, property covered and terms of insurance.

2. SAME—AMERICAN AGENCY SYSTEM—TERMINATION OF AGENCY—EXPIRATIONS.

> A main feature of the American Agency System is that where an insurance company cancels an agency the entire rights to the expirations and all other information which the agent has assembled belongs to the agency and not to the company except that where the agent's balances are unpaid at the end of the allotted term in the contract the company has a lien upon the business and may sell the agency or continue as they see fit, the purpose being to preserve the established business for the agent as far as possible upon the termination of the agency, but it does not cut off all right of the insurer to contact persons to whom its policies had been issued through the discontinued agency.

3. SAME—SCOPE OF AGENCY—SERVICING OF POLICIES—NOTICE OF CANCELLATION.

> In determining the scope of the rights and duties of an insurer and its agent the character of the agency bears materially upon what the insurer may do relative to servicing its policies after termination of an agency or in giving notices of cancellation.

4. SAME—AGENCY'S ESTABLISHED BUSINESS—INSURER'S FORWARDING OF NOTICES OF CANCELLATION DIRECT TO INSURED.

> The right of an insurance agent under the American Agency System to a preservation of his established business upon termination of the agency is not affected by the insurer's continuance of its uniform, accepted and established practice of forwarding notices of cancellation direct to its insureds provided insurer in sending such notices after agency was cancelled did not maliciously interfere with agent's right in his established business.

Inducing breach of contract, see 4 Restatement, Torts, § 766 *et seq.*

5. SAME—AGENT'S INTEREST IN EXPIRATIONS—TERMINATION OF
AGENCY—COMMUNICATION WITH INSURED.

An insurance agent's property rights in expiration data of his
established business would not necessarily preclude the com-
pany. from communicating with the insured for any reason
whatever after termination of the agency where previous to
termination of the agency it had been the company's uniform,
accepted and established practice to send notices of cancel-
lation directly to parties whose insurance with the company
had been procured by the discontinued agency.

6. SAME—NOTICE TO INSUREDS OF TERMINATION OF AGENCY.

Letter by automobile insurance company to its policyholders
who had been insured through plaintiff agent, sent after
agency contract was terminated and informing insureds of
that fact and whom to consult regarding policies was neces-
sary to protect company's rights under the circumstances and
not improper.

7. PRINCIPAL AND AGENT—DURATION OF GENERAL AGENCY—NOTICE
OF TERMINATION.

A general agency continues until in some way parties have been
notified of its termination, or have sufficient facts in their
possession to put them upon inquiry.

8. INSURANCE—TERMINATION OF AGENCY—SERVICING OF POLICIES BY
INSURER.

Action of automobile insurance company in designating a new
agent whom its insureds might consult with reference to
reports of accidents and changes in policies after termina-
tion of plaintiff's agency contract was not malicious inter-
ference with former agent's rights relative to expirations of
policies where the new agent is not shown to have solicited
plaintiff's clientele or to have done any act which would inter-
fere with plaintiff's property rights in his established busi-
ness as the insurer still had an obligation to service its out-
standing policies.

9. SAME—TERMINATION OF AGENCY—EXPIRATION DATA AS TO
POLICIES—SERVICING OF POLICIES.

An insurance agent's property rights in expiration data as to
outstanding policies of an insurer do not deprive the in-
surer of the right to service such policies after it had ter-
minated the agency contract.

10. SAME—TERMINATION OF AGENCY—MALICIOUS INTERFERENCE
WITH ESTABLISHED BUSINESS—EVIDENCE.

Letters sent to policyholders by insurer after cancellation of

contract of agency through which policies were written, cancelling the policies and informing insureds of agreement with another insurer to be represented by the discontinued agency and stating that such action was a fairly common practice ''where trouble with an agent develops,'' *held*, not to contain evidence of malicious interference with agent's rights in established business, it being the insurer's legal and moral right to tell the truth to its policyholders as to why cancellation was being effected.

11. SAME—TERMINATION OF AGENCY—MALICIOUS INTERFERENCE WITH ESTABLISHED BUSINESS—LETTERS TO POLICYHOLDERS.

In action by former agent of automobile insurance company for malicious interference with agent's established business after insurer had cancelled the agency contract, letters sent by insurer to its various policyholders whose policies had been procured through such agency informing them of the cancellation of the agency contract and later the transfer of risk to another company and which are not claimed to have contained an untruthful statement nor statements evidencing malice were not malicious in that they did not state the transaction was a pleasant business transaction.

12. COMPROMISE AND SETTLEMENT—INSURANCE AGENCY CONTRACT—CANCELLATION.

After an agent's contract with the insurer has been cancelled and the parties enter into a settlement agreement, the rights and obligations of the parties are determined and controlled by the settlement agreement.

13. INSURANCE—TERMINATION OF AGENCY—COMPROMISE AND SETTLEMENT—NOTICE OF CANCELLATION—MALICIOUS INTERFERENCE WITH AGENT'S ESTABLISHED BUSINESS.

After agency contract between agent and automobile insurance company had been terminated by latter and the parties had entered into a settlement agreement which recognized the agent's rights as to his established business but was silent as to the company's right to mail notices of cancellation to persons who had procured insurance through the agency, the mailing of such notices direct to the insureds three months later which is not shown to have injured the former agent who failed to return defendant's policies as agreed does not constitute evidence of malice affording a basis for recovery by him in an action for malicious interference with his established business.

14. SAME—CANCELLATION OF AGENCY—APPOINTMENT OF FORMER SUBAGENT AS AGENT—MALICIOUS INTERFERENCE WITH ESTABLISHED BUSINESS.

The fact that a subagent under plaintiff insurance agent was appointed as one of defendant company's agents in the area in which plaintiff had been representing defendant before cancellation of the agency contract would not constitute evidence of malicious interference with plaintiff's established business where there is no showing that the former subagent was under contract to continue as such with plaintiff or that defendant permitted him to obtain information as to expiration of policies procured through the agency although such agent may have solicited insurance from some of plaintiff's clientele the same as any other agent.

15. SAME—CANCELLATION OF AGENCY CONTRACT.

In former agent's action against automobile insurance company for malicious interference with plaintiff's property rights in his expirations or expiration data, testimony when viewed in light most favorable to plaintiff *held,* insufficient to support a finding by jury of such malicious interference, by improper use by defendant or revelation to others of any of plaintiff's expiration data or otherwise, evidence that plaintiff, incident to the termination of his agency, suffered annoyance, inconvenience and loss of business being insufficient to make a case for the jury.

16. TORTS—MALICE—EVIDENCE—PRESUMPTIONS.

In action for damages for malicious interference with plaintiff insurance agent's established business, direct evidence of malice is not essential as a malicious motive or intent will be presumed or implied in law from the intentional commission of a wrongful act which causes injury to another.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted October 10, 1941. (Docket No. 43, Calendar No. 41,742.) Decided January 5, 1942. Rehearing denied February 11, 1942.

Case by H. C. Woodruff, individually and doing business as H. C. Woodruff Agency, against Auto Owners Insurance Company, a Michigan corporation, for wrongful injury to plaintiff's business.

Verdict and judgment for plaintiff. Defendant appeals. Reversed.

*C. M. Robson, L. F. Porter* and *L. J. Crum,* for plaintiff.

*Jackson, Fitzgerald & Dalm,* for defendant.

North, J. Plaintiff alleges that in his business of conducting an insurance agency he was damaged by the unlawful conduct of defendant in violation of plaintiff's rights in and to that portion of his insurance business which he had caused to be written in the defendant Auto Owners Insurance Company and for which it had issued its policies. It is agreed that in plaintiff's representation of the defendant company as its agent at Kalamazoo, what is known as the American Agency System was embodied in and was a part of the contractual rights and obligations of the respective parties. The purport of the American Agency System is that upon termination of an insurance agency, if the agent's financial obligations to the company are paid in full, all rights in the expiration data of existing insurance procured by the agent belong to him. In effect it is the preservation of the good will of the established business and the business itself as the property right of the agent, not of the insurance company. For an alleged violation of plaintiff's rights in his so-called expirations or expiration data after defendant had terminated plaintiff's agency, plaintiff brought this suit and on trial by jury had a verdict for $5,000. Judgment was entered on the verdict. Defendant has appealed. The sole ground of appeal is that no testimony was offered from which a jury could find that defendant maliciously interfered with plaintiff's property rights; and therefore the trial court

was in error in denying defendant's motion for a directed verdict. Such a motion was made at the close of all the proofs. Later a motion for judgment *non obstante veredicto* was heard and denied.

On this appeal it is of first importance to consider the extent to which the rights of these litigants are affected or controlled by the so-called American Agency System. It is agreed that this system is a custom generally applicable to insurance agencies and is applicable in the instant case; but there is disagreement as to the extent it governs the rights and duties of the respective parties. Several witnesses testified as to what in effect is meant by the American Agency System. Plaintiff testified:

"One of the main features of this system is that where the company cancels the agency the entire rights to the expirations and all other information which the agent has assembled belongs to the agency and not to the company with the provision that if the agent's balances are unpaid at the end of the allotted term in the contract the company has a lien upon the business and may sell the agency or continue as they see fit. * * * The expiration as the agents get them is a list or copy of the policy which was written showing the name and address of the person insured, a description of the article insured, and the expiration date and all the necessary information including the premium which is necessary to keep a record of the policy itself."

In *Kerr & Elliott* v. *Green Mountain Mutual Fire Ins. Co.,* 111 Vt. 502, 510 (18 Atl. [2d] 164), the supreme court of Vermont said:

"In the insurance field the term 'expirations' has a definite meaning. As to this it has been stated: 'The record known in insurance circles as expirations is in effect a copy of the policy issued to the insured, which contains the date of issuance, name

of the insured, expiration, amount, premiums, property covered and terms of insurance.' ''

We think it is clear that the full purpose of and the need for the application of the custom established by the American Agency System is that the so-called clientele or established business of an insurance agent may be preserved to him as far as possible upon the termination of his agency. To this extent, and no further, the custom should be respected and enforced. This custom does not cut off all right of the insurer to contact persons to whom its policies had been issued through the discontinued agency. Instead the insurer is only denied what would otherwise be legitimate in the way of attempting to appropriate to itself or some other of its agents the business which under this established custom belongs to the agent with whom the principal has severed its relations.

In determining the scope of the rights and duties of the insurer and its agent it is important to be mindful of the character of the agency, because that materially bears upon what the insurer may rightfully do relative to servicing its policies after termination of an agency or in giving notices of cancellation. As will be noted later, these are two matters of which plaintiff herein complains.

Plaintiff in the instant case acted as a solicitor of applications for insurance in defendant company; and such applications were submitted by him to the defendant company for acceptance or rejection. If accepted, defendant wrote the policy which was delivered through the agency. Plaintiff did not write the policy and deliver it to the insured before submitting the application to the insurance company as is generally done with fire insurance. Further, policies issued by defendant provided it might cancel

them upon five days' notice to the insured; and during all the years that plaintiff acted as defendant's agent the uniform and accepted practice was for the insurer to send notices of cancellation direct to the insured, not to have such notices given by the agent, though his name as agent appeared on the notices of cancellation. ·Obviously plaintiff's right under the American Agency System would not be violated by a continuation of this established practice after termination of the agency, provided defendant did not by its conduct maliciously interfere with plaintiff's right in his established business.

We are decidedly not in accord with plaintiff's contention as to the scope or effect of the custom prevalent under the American Agency System. Plaintiff's extreme and unsound position is indicated by the following from his brief:

"It follows from this that if the agent owns the expiration data, that·he owns the name and address of the person insured, and the purpose of his ownership of that name and address is so that the insurance company cannot communicate with those persons for any *reason whatsoever.* The ownership of the name and address is an exclusive right in the agent.   *   *   *

"We insist that any communication sent to the policyholders of the plaintiff's agency violated the contractual rights between these parties, since plaintiff Woodruff owned their name and address solely and exclusively."

The issue here presented is whether there is any evidence that in any of the particulars asserted by plaintiff the defendant maliciously interfered with plaintiff's property rights in the expirations or expiration data of his established business. In support of plaintiff's claim that defendant unlawfully

and maliciously interfered with plaintiff's property rights in the expiration data of insurance he had caused to be written in defendant company, plaintiff relies much upon the contents of three letters written by defendant shortly after plaintiff's agency was terminated to holders of policies solicited and obtained by him. There are certain other acts of alleged interference to which reference will also be made.

Plaintiff had been conducting an insurance agency in the city of Kalamazoo for some time prior to 1926. In that year he became the local agent of the defendant company, which is an automobile insurance company incorporated under the law of Michigan. At the time plaintiff's agency was terminated by defendant the written agency contract between these parties provided: "This contract may be cancelled at any time by either party herewith without prior notice, in which event all supplies shall be immediately surrendered to the Company." Because of the quoted provision there would be no purpose in reciting the matters of dissatisfaction which led to the termination of plaintiff's agency by defendant. It was terminated on March 30th as of April 1, 1937, and the office supplies in plaintiff's possession were demanded and received by defendant's representatives. On April 5, 1937, defendant from its home office in Lansing mailed to some of its policyholders whose insurance had been procured by plaintiff the following letter:

"Dear Policyholder:

"Please be advised that the H. C. Woodruff Agency of Kalamazoo, Michigan, has been discontinued as an agent for the Auto Owners Insurance Company effective April 1, 1937.

"Therefore, for the time being, any reports of accidents or changes in your policy should be re-

ported to T. M. Alexander, 803 Hanselman building, telephone number 2-2054. Also if there are any questions regarding your policy or adjustments with this company they may be discussed with Mrs. Alexander.

"Mr. Clarence Naze will continue to promptly and courteously take personal charge of your loss adjustments the same as he has been doing during the last several years.

"Assuring you of our continued prompt and careful attention to all matters pertaining to your policy with us, we are,

"Very cordially yours,"

The complaint or objection appellee makes to this letter is stated in his brief as follows:

"The letter was contrary to the American Agency System. Sending plaintiff's clientele to Mrs. Alexander and letting her discuss with them questions regarding their policy was taking the interest away from the agent in that respect; and there was no proper occasion to send such a letter to plaintiff's clientele."

Appellee's contention that the letter was improper is not tenable. Its truthfulness or accuracy is not challenged. Defendant not only had a right to advise these policyholders of the termination of the Woodruff agency, but it was its legal duty to do so or in the alternative be bound by any action of Mr. Woodruff within the scope of his former agency; and this after his agency had been terminated.

"A general agency continues until in some way parties have been notified of its termination, or have sufficient facts in their possession to put them upon inquiry." *Bloomer* v. *Dau,* 122 Mich. 522; quoted in *Don G. McAfee, Inc.,* v. *Great American Indemnity Co.,* 289 Mich. 143.

Nor was there any impropriety in defendant's referring its policyholders to Mrs. Alexander as being the defendant's representative to whom "any reports of accidents or changes in your policy should be reported." The proper conduct of defendant's business with its policyholders necessitated communication of this information in view of the fact that defendant's agency had been terminated. Defendant's right and obligation to service its policies still remained. Mrs. Alexander was an employee of the defendant company at Lansing. She was sent temporarily to Kalamazoo to take charge of servicing defendant's policies after the termination of plaintiff's agency. There is no testimony that she solicited the business of plaintiff's clientele or did any act which would interfere with his property rights in his established business. We do not understand, as hereinbefore indicated, that the custom established under the American Agency System deprived defendant of the right of properly servicing its outstanding policies to the extent and in the manner outlined in the letter above quoted, subsequent to the termination of plaintiff's agency.

At the time of the termination of the Woodruff agency, appellant began pressing appellee for the settlement of his account with defendant on which there was an unpaid balance in excess of $3,000. Substantially a week after plaintiff's agency was terminated these parties reached an understanding or agreement that if plaintiff paid defendant the balance of his account he would be allowed to service the policies of his clientele and have the insurance transferred to some other company; and it was agreed that as soon as plaintiff paid defendant the latter would discontinue servicing these policies. After a settlement was later consummated, defendant did not attempt to service such policies.

On April 14, 1937, these litigants and a representative of the American Motorist Insurance Company, which contemplated rewriting the policies procured by plaintiff, met for the purpose of accomplishing an adjustment or settlement of the affairs of plaintiff and defendant. They entered into a three-party contract which will be noted later herein. At this time plaintiff complained that the above-quoted letter of defendant had caused him trouble with his policyholders; and it was agreed defendant should send out another to the same parties. There is much uncertainty as to whether a form letter for this purpose was dictated at the time, as plaintiff claims. If so, it was not used. But on April 19, 1937, defendant mailed to part of plaintiff's clientele a letter designated in this record as Exhibit D and to others of plaintiff's clientele a letter of practically the same purport designated in the record as Exhibit E. Exhibit D reads as follows:

"Dear Policyholder:

"(Recently you were notified that we had cancelled the H. C. Woodruff Agency in your city. As a result of that cancellation it was necessary for us, for a temporary period, to ask you to report any necessary policy changes or any losses you might sustain to T. M. Alexander, 803 Hanselman building.

"Since that letter) we have entered into an agreement with the American Motorist Insurance Company of Chicago, now represented by the above Agency, to have them assume the risk as provided in your policy, beginning April 15, 1937, and pay all losses occurring subsequent to 12:01 a. m., April 15, 1937. They will in due process substitute their own policies for your present policy. You will, therefore, have continuous protection for your policy year.

"We wish to advise that the cancelling of your policy is not to be construed by you that we consider you an undesirable risk. It is carrying out a practice between companies that is fairly common where trouble with an agent develops and is in harmony with the practices usually adopted where companies are operating through the American Agency System."

Exhibit E is the same as Exhibit D except in lieu of the first part of Exhibit D which we have marked with parentheses the following was written in Exhibit E:

"Dear Policyholder:

"Due to the fact that we have cancelled the H. C. Woodruff Insurance Agency, Kalamazoo, the following explanation is necessary and you are requested to observe planned changes affecting your protection."

The complaint which plaintiff makes concerning the letters, Exhibits D and E, is set forth in his brief as follows:

"Mr. Gemrich [plaintiff's attorney who had attended the meeting between the parties] was very anxious that the letter that would be sent out following the meeting of April 14th, should correct what he thought was the wrong impression in the other letter [the letter of April 5, 1937].　＊　＊　＊ The *last paragraph* of the letter [Exhibits D and E] was the very thing they had tried to keep away from the policyholders. Exhibits D and E were in violation of the custom of the American Agency System in that they violated the ownership and control of the business. These letters caused serious harm to plaintiff."

It is also asserted in plaintiff's brief that the purpose sought to be accomplished by sending out a

letter subsequent to the one of April 5th was that: "A particular letter should be sent out that would advise the people that the matter was back in Mr. Woodruff's hands." These letters did state the risks of these policyholders had been transferred to American Motorist Insurance Company "represented by the above [Woodruff] agency." But in this connection it may be noted we do not understand that under the American Agency System the defendant company was obligated expressly to advise these policyholders that the company to which their insurance was transferred was locally represented by Mr. Woodruff. There is no claim that either of these letters contains an untruthful statement; but the complaint, as stated in plaintiff's brief, is of the last paragraph in the letters Exhibits D and E. Obviously the specific statement considered objectionable is the reference to "where trouble with an agent develops." But that statement at most was a rather mild reference to the facts and circumstances which led defendant to terminate plaintiff's agency; and it does not disclose literally whether the "trouble" was a complaint on the part of the agent against the company or of the company against the agent. According to plaintiff's brief he contends the defendant company should have in effect written to these policyholders: "It [plaintiff's clientele] was his business and he was going to handle it and that they were all rewritten and there would be no loss to any of them, and the letter * * * should be placed upon the basis of being a pleasant business transaction between the parties." Neither under the American Agency System nor under any rule of law of which we have knowledge was there any obligation on the part of defendant to send such a communication to these policyholders. Plaintiff's right to recover is

dependent upon there being some evidence of a *malicious* injury by defendant to plaintiff's property right in the expirations and expiration data of the policies issued through his office in the defendant company. We fail to find any statement in any of these letters which is indicative of malice. Defendant had both a legal and a moral right to tell the truth to its policyholders as to why it was cancelling their insurance contracts.

As bearing upon plaintiff's complaint of any of defendant's conduct touching this business subsequent to April 14, 1937, when the triparty settlement contract was consummated, it should be noted that regardless of what may have been plaintiff's rights prior to such settlement, we are of the opinion that thereafter the rights and obligations of these litigants should be determined in the light of the provisions of the settlement contract. The express provision as to plaintiff's rights in outstanding policies as set forth in this settlement agreement is that the defendant "agrees that the list of policyholders' names and the list of expiration dates on all policies written by the third party [plaintiff] and now in force in the first party's [defendant] company are the property of the third party and that first party will not divulge information relating thereto to other agents and will not allow any agent access to its records relating to the same." From and after the date of settlement the quoted provision in the settlement contract must be considered as controlling the rights and obligations of these respective litigants. It is to be noted that this provision in the settlement contract says nothing about defendant's right to mail notices of cancellation, which is another aspect of defendant's conduct of which plaintiff complains. On this phase of the case it is essential to note the following.

In the settlement agreement of April 14th the American Motorist Insurance Company agreed to rewrite, with certain exceptions, all of the outstanding policies which plaintiff had procured and caused to be written in the defendant company and to assume all liability arising from such risks subsequent to 12:01 a. m., April 15, 1937. Plaintiff agreed that after he effected the exchange of policies he would deliver to defendant its policies or obtain a signed release from the insured. The contract provided for the accomplishment of this substitution of policies "as rapidly as can conveniently be done." Subsequently plaintiff did replace 950 of approximately 1260 of the policies issued through his agency and which were outstanding in defendant company on the date of the settlement agreement. It is obvious that until these substitutions were accomplished or notice of cancellation was given, defendant's liability on all of these outstanding policies continued. About three months after the date of the settlement agreement, and evidently believing it was justified for the purpose of its own protection from the liability just noted, defendant mailed notices of cancellation to holders of policies issued through plaintiff's office. Some of these notices of cancellation went to persons to whom plaintiff had not delivered a new policy in the American Motorist Insurance Company; but some of them, through obvious inadvertence, went to people who had received substituted policies in the American Motorist Insurance Company. But it does not appear in the record that any of these latter policyholders terminated their insurance in consequence of having received the cancellation notice from defendant. Defendant under the terms of its contract had a right to cancel these policies, if done in good faith rather than with intent to injure plaintiff's

business. The cancellation notices were in the same form and were served in the same manner as had prevailed during the years plaintiff had acted as defendant's agent. Since plaintiff had not collected and surrendered these outstanding policies in defendant company or secured policy releases, it was reasonably necessary for the protection of defendant's rights that it should give the persons holding such policies notice of cancellation. Surely in this exercise of a lawful right for a lawful purpose defendant did not act in a manner which evidenced malice on its part. We are not impressed with plaintiff's contention that he sustained an actionable injury by reason of defendant having sent these notices direct to policyholders instead of through plaintiff's agency or by having imprinted on the notices of cancellation: "H. C. Woodruff, Agent." This had been the common practice during all of plaintiff's agency. Further, with the exception of the first 50 or 60 notices mailed defendant inclosed with its notice of cancellation the following letter:

"Dear Sir:                              July 31, 1937
"The inclosed notice of cancellation affects your Auto-Owners Insurance Company's policy purchased sometime ago through the H. C. Woodruff Agency.
"In the severance of our connection with the above-mentioned agency, our policy, when being substituted by another company's policy, was to be returned to us and because it has not been returned, this notice is necessary.
"By referring to the policy number on the inclosed notice of cancellation you will know which policy is no longer in force with us."

In view of all the circumstances surrounding the mailing of these notices of cancellation, it must be held that defendant's conduct in so doing did not

constitute evidence of malice which would tend to
sustain a verdict for plaintiff in this case.

The only other phase of this record which merits
notice on this appeal is plaintiff's contention that
there is evidence of malicious injury in the follow-
ing.  For some time prior to the termination of
plaintiff's agency a Mr. Keyser, who was a sales-
man for a biscuit company, as a side line solicited
insurance in the defendant company for plaintiff's
agency.  He would report to plaintiff's office about
once a week, and at the time plaintiff's agency was
terminated there were about 50 outstanding policies
which had been procured by Keyser.  But as to
these policies plaintiff testified:

"All of the policies which Mr. Keyser wrote while
in my employ, the expiration belonged to him.  That
was the agreement.  *   *   *   I had no property
right though in the expirations of these policies."

Sometime after plaintiff's agency was terminated
Mr. Keyser requested the appointment as an agent
of the defendant company, and he was appointed as
one of its Kalamazoo agents.  There is no claim
that Keyser was under contract obligation to con-
tinue as a subagent of plaintiff.  Nor is there any
testimony that Keyser had any knowledge of plain-
tiff's expiration data except that pertaining to the
insurance he had written and in which, as plaintiff
testified, Keyser possessed the rights in the expira-
tions and expiration data.  Nor is there any testi-
mony that defendant permitted Keyser to obtain
from it or its records any information of the expira-
tions or expiration data pertaining to policies
procured through plaintiff's agency.  Surely upon
the termination of plaintiff's agency, defendant not
only had the right but in the natural course of its
business would appoint another agent or agents in

the Kalamazoo district. Defendant's having done so is not evidence of malice. Under the circumstances of this case, the fact appearing from the record that Keyser may have solicited insurance from some of plaintiff's clientele, the same as any other agent might have done, does not tend to establish malicious interference by defendant with plaintiff's property rights.

We are mindful of the testimony showing that plaintiff, incident to the termination of his agency, suffered annoyance, inconvenience, and loss of business. But that alone does not make a case for the jury. Instead there must be competent testimony tending to prove that defendant maliciously interfered with plaintiff's property rights in his expirations or expiration data. Viewing the testimony in the light most favorable to plaintiff, we are unable to find such testimony in this record. In brief, there is no proof that defendant improperly used or revealed to any other party any of plaintiff's expiration data or that defendant was guilty of malicious interference with plaintiff's beneficial use and enjoyment of that property right. In reaching this conclusion we are also mindful that direct evidence of malice is not essential; but "a malicious motive or intent will be presumed or implied in law from the intentional commission of a wrongful act which causes injury to another." 34 Am. Jur. p. 685.

Judgment entered in the circuit court is reversed without a new trial. Costs of both courts to appellant.

CHANDLER, C. J., and BOYLES, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.