## McGough v. Morgret

Before McKenrick, P. J., and McDonald, J.

*Walter A. Criste*, for plaintiff.

*Walter C. Herriman*, for defendant.

McDONALD, J., June 25, 1958.—This is an action in assumpsit wherein plaintiff claims damages against defendant for breach of an insurance agency contract. Defendant has filed preliminary objections to the complaint in the nature of a demurrer and in the alternative for a more specific complaint. After argument and consideration of briefs filed by both parties these objections are now before the court for disposition.

On December 1, 1947, defendant, a general insurance agent, executed a contract with plaintiff as an agent in "Johnstown and surrounding territory" for the "purpose of procuring and transmitting applications for Accident and Health Insurance in the Hoosier Casualty Company, delivering policies thereon, collecting and paying to the General Agent the premiums on insurance so affected and of performing such other duties as may be required by the General Agent, all in accordance with the Company's Manuals, rate books, and rulings in force at the time and specific instructions from the General Agent and not otherwise." Under paragraph 7 of the contract either party had the right to cancel upon 30 days' written notice to the other. On December 1, 1955, defendant gave written notice to plaintiff that he elected to cancel as of January 1, 1956. On or about December 20, 1955, he mailed to plaintiff's customers under his letterhead the following letter:

"Dear Policyholder:

*BEWARE OF PROMISES*

"Many promises are being made by salesmen knowing full well the promises cannot or will not be honored by the Company they represent. So, *BEWARE OF FALSE PROMISES.*

"If you should desire to increase the Hospital or Surgical Benefits of your policy with our Company, or add additional coverages, such as Medical Payments

or Loss of Time Benefits in case of illness or injury, a Post Card addressed to us will bring full information by return mail without obligation.

"But don't, *please don't* let any agent *Change Your Policy* to another Company since his interest may be purely for his own personal gain. And, remember— all new policies must be carried for a certain period of time (in some cases many, many months) before certain sicknesses are covered. This 'probation period' has long since passed as far as your policy in this Company is concerned.

"*STAY PROTECTED* by seeing that your present policy is renewed promptly upon receipt of each renewal notice.

"Yours very truly,
C. R. MORGRET & COMPANY
/s/    C. R. MORGRET
MLS
Manager

CRM:mls"

As a result of this letter mailed prior to the effective date of termination of the contract, plaintiff claims his clients and customers refused to permit him to write their insurance in the company which he represented after termination of the contract and therefore he has suffered damages. For the purposes of the demurrer these facts are admitted by defendant.

Plaintiff claims the letter was a breach of paragraph 8 of the contract which provides as follows:

"8. In the event of the termination of this contract and provided the Agent has promptly accounted for and paid to the General Agent all premiums and other monies collected or held for or on behalf of the Company or General Agent and for which the Agent may be liable, the records of the Agent including the records of expirations in the possession of the Agent shall

remain his property and be left in his undisturbed possession for his use."

Whether it was a breach of contract depends upon the interpretation of the above provision.

The preliminary objection in the nature of a demurrer assigns five reasons which may be summarized as follows: First, that the complaint fails to set forth a breach of contract or violation of any right of plaintiff; second, that the contract had been terminated in accordance with its terms and no compensation was owing to plaintiff. As to the latter statement, which covers 3, 4 and 5 of the preliminary objections, it is not contended by plaintiff, as we understand the averments of his complaint, that the contract was not legally terminated, or that any compensation is due under its terms. This is not in issue.

Plaintiff argues that under paragraph 8 of the contract, above quoted, having settled all accounts with defendant upon its termination, the records, including expirations, which were in his possession, became his property to be used exclusively by him. In other words, he takes the position that upon compliance with the contract, he was vested with a property right in these records for an interference of which defendant would be liable in damages. Defendant argues that after termination of the contract, both he and plaintiff were entitled to use the information contained in the records and the expirations and that his letter to the policyholders was not a breach of paragraph 8, since the records and expirations were still in the "undisturbed" possession of plaintiff and could be used by him in competition with defendant if he wished.

It is recognized by both plaintiff and defendant that the primary concern in this, as in similar cases, is with the use of the expirations information which is a part of the records. In the insurance field, the word "expira-

tions" has a definite and well recognized meaning. It refers to the records of an insurance agency, such as a copy of the policy issued to the insured and records containing the date of the policy, the name of the insured, the date of its expiration, the amount and terms of insurance, premiums and property or person covered. Armed with this information, the agent by usual practice contacts the insured before the existing contract expires and having at hand all the information previously procured, seeks a renewal of the policy or offers a solution for the insured's requirements. There is no doubt this information is of great assistance to any agency in carrying on an insurance business, and it is "in the insurance field, recognized as a valuable asset in the nature of good will" D. L. Phillips & Co., Inc., v. Pennsylvania Threshermen and Farmers' Mut. Cas. Ins. Co., 199 F. 2d 244; F. B. Miller Agency, Inc., v. Home Insurance Company, 276 Ill. App. 418. The reason for value is aptly stated in Alliance Ins. Co. v. City Realty Co., 52 F. 2d 271, as follows:

"The well-known disposition of policyholders to accept policies offered to them in renewal of, or in lieu of, expiring policies renders valuable the expiration date or 'expirations' of an agency which ceases business."

Many years ago it was generally recognized that expirations belong to the insurance company. This principle was no doubt predicated on the general rule of agency wherein an agent is subject to a duty to his principal before and after termination of the agency, not to use or communicate any information confidentially given him by the principal or acquired by him during the course of, or on account of, his agency. See 2 A. L. I. Restatement of the Law of Agency, §395.

However, through pressure, exerted in particular by the National Association of Insurance Agents, most

companies have made concessions and now recognize
the principle that expirations belong to the agents. In
agreeing to this, however, they included certain con-
ditions under which the rule would not be operative.
Under the former rule even though an agent had paid
all his balances and otherwise complied with the con-
tract, the company could terminate the agency and
dispose of the expirations for its own benefit. Under
an unqualified rule of agency ownership of expirations
as urged by the National Association of Insurance
Agents, the pendulum swung the other way and an
agent in arrears could terminate his contract, refuse
to pay his balances and still dispose of the expirations
for his own benefit. Thus, a compromise was reached
wherein it was understood the agent is the owner of
the expirations and information connected therewith,
provided, however, he has paid all balances due the
company and is free from all taint or unprofessional
or unlawful acts in termination of the agency. This is
sometimes referred to as the "American Agency Sys-
tem" and has been recognized as custom and usage in
the relationship between an insurance company and
its agents.

As we perceive the relationship between an agent
and the principal under insurance agreements, three
situations may arise with respect to the determination
of ownership and use of "expirations": (1) Under the
strict agency rule, ownership and use would be exclu-
sively in the principal; (2) under the "American
Agency System" the agent is the owner and has exclu-
sive use (see F. B. Miller Agency v. Home Insurance
Company, supra) or, both agent and principal have a
mutual right to the use of said expirations provided
the principal does not maliciously interfere with the
agent's right (see Miller Insurance Agency v. Home
Fire & Marine Insurance Co. of California, 100 Mont.

551., 51 P. 2d 628; Woodruff v. Auto Owners Ins. Co., 300 Mich. 54, 1 N. W. 2d 450) ; (3) the ownership and use is governed by terms of the contract between the principal and agent.

Since plaintiff here relies on the terms of the contract as being determinative of the ownership and right to the use of the records and expirations without interference by defendant, we are here only concerned with an interpretation of the contract and in particular that phrase in paragraph 8 as follows: "The records of the agent including the records of expiration in the possession of the agent shall remain his property and be left in his undisturbed possession for his use." We are not here concerned with custom or usage of the trade, or an application of the laws of agency, although both of these are useful in understanding the issue. In our opinion the language of paragraph 8 is clear and unambiguous, especially when read in light of the principle of ownership and use as developed by custom of the trade. The agreement that the records and expirations in possession of plaintiff "shall remain his property" can only mean that he had, during the term of the contract, a property interest in them and after its termination, provided he had settled his accounts, that property interest was absolute. It is a well known fact that records and expirations of an insurance agency are an asset which very often are sold for a valuable consideration: Miller Insurance Agency v. Home Fire & Marine Insurance Co., supra.

When such a status is created by contract as here, it would follow that any interference with this property, made valuable by the energies and talents of the agent, by one bound under the terms of the contract would be a breach of that provision. Certainly, a contract terminable by either party upon 30 days' written notice as here, would not be nearly as attractive with-

out this provision. With this provision an agent is provided with the incentive to produce a large volume of business which, of course, inures to the benefit of the principal. The agent is more secure in expending his energies to this end when he has the knowledge that his property in the business and its good will is protected in event the principal for personal or specious reasons might terminate the contract. In our opinion, considering the uncertain term of insurance agency agreements because of the ease with which they can be terminated, the protection of the agent's rights to the ownership and use of the records and expirations is a primary consideration offered by the company in the execution of the contract.

It is hornbook law that all terms of a contract should be given meaning if possible. The words in paragraph 8 "and be left in his undisturbed possession for his use" would be surplusage were we to adopt the position of defendant. He argues that the records and expirations are in the undisturbed possession of plaintiff, referring no doubt to the physical possession. If this is all the phrase means then it is merely surplusage, because physical possession of the records and expirations as property of plaintiff is accomplished by the foregoing "the records of the agent including the records of expirations in the possession of the Agent shall remain his property. . . ."

Ownership is thus defined and in its normal legal usage means peaceable and undisturbed possession. It is clear the word "undisturbed" and the phrase "for his use" refer back to the ownership of the records, recognizing their use as having a prospective value to the agent, and further defining the obligation of defendant not to interfere with that ownership and use. It would have been a simple matter to indicate a mutual use in the parties if this was intended. In deter-

mining the legal meaning of the word "undisturbed" we resort to definition. "Disturbed" means to interrupt the settled state of, to interfere with in the lawful enjoyment of a property right. When the prefix "un" is added it means the reverse, that is, not to disturb the settled state of, or to interfere with in the lawful enjoyment of a property right.

Thus, the records being the property of plaintiff, defendant has bound himself not to interfere with the lawful enjoyment of that property. The word "undisturbed" is further strengthened by the phrase "for his use". We understand this to mean for the agent's sole and exclusive use. There was no requirement that defendant obligate himself to these terms. He bargained freely with plaintiff and he is now bound by the clear and unambiguous meaning of the terms of the contract.

Our research and that of counsel for both parties has failed to disclose a Pennsylvania case wherein a similar provision of an insurance agency contract is interpreted. There are, however, several cases reported in other States which support the position of plaintiff.

In Kerr & Elliot v. Green Mountain Mut. Fire Ins. Co., 111 Vt. 502, 18 A. 2d 164, the facts closely parallel those of the case at bar. There plaintiffs (agent) and defendant (company) terminated their agency contract in accordance with its provisions. The contract contained a provision whereby the "use and control of expirations shall remain the property of the Agent and be left in his undisputed possession". Two days after the termination, defendant mailed a circular to the policyholders advising the appointment of another agent and soliciting renewals with defendant company. A similar letter was sent by the new agent to the policyholders. As a result of these letters plaintiffs sued, claiming an interference in their property right in the expirations. Judgment was recovered in the lower

court and affirmed on appeal. The appellate court, in referring to the rights of plaintiffs, stated:

"It, therefore, follows that in using these expirations to place the business covered by the policies here in question with other companies for which plaintiffs were acting as agents and to thus secure to themselves the continued benefits of such business, the plaintiffs were only exercising their legal rights secured to them by the terms of the agreement. Any interference by the defendant for the purpose of and tending to hinder them from so doing would be an invasion of such rights.": Page 168.

Thus, any act of solicitation of the clientele of plaintiffs by defendant was an interference with the property rights of plaintiff in the expirations data and therefore compensable in damages.

In the Kerr and Elliot case, as well as the case at bar, by contractual provision the expirations are the property of the agent for his use. The manner of that use in the Kerr and Elliot case is referred to as "undisputed" whereas in the case at bar it is referred to as "undisturbed". There is a very little difference, if any, in the meaning of these two words under the circumstances.

In V. L. Phillips and Company, Inc., v. Pennsylvania Thresherman and Farmers' Mut. Cas. Ins. Co., 199 F. 2d 244, a Virginia case, we again find a startling similarity of facts and a holding in support of plaintiff's position. There the contract between plaintiffs (Agent) and defendant (Company) was terminated in accordance with its terms. It further provided that "the Agent's records, use. and control of the expirations shall be deemed the property of the Agent and left in his undisputed possession". After termination, defendant employed the former subagents of plaintiffs and solicited the policyholders for renewals. Plaintiffs

sued for damages alleging that defendant interfered with and deprived them of the expirations on the business which they had created. The district court entered judgment for defendant, but on appeal to the circuit court this judgment was reversed. At page 247 of the appellate opinion it was stated:

"The expirations referred to in the preceding paragraph [paragraph 16 of the Contract] were intended to be, and beyond a doubt, were expirations on all business produced by the plaintiff or its subagents throughout the State of Virginia excluding the two Counties stated in the contract. The contract admits of no other reasonable interpretation."

And on page 248:

"The defendant had no right to solicit directly from the insured nor could it do so indirectly by appointing plaintiffs' former agents and thereby acquire through them the expirations and use them to the prejudice of the plaintiffs. It is not clear how complete was the record of the subagent. While he was required to forward all evidence of insurance effected by him to the plaintiffs, we assume that the subagent retained the name of insured, the amount and premium and the expiration of each policy. The company could not supply this information to a new agent and let him solicit the renewal nor could it do so itself without encroaching on the property right it gave to the plaintiffs under the contract.

"The provision of the contract that the 'Agent's record use and control of the expirations shall be deemed the property of the Agent and left in his undisputed possession' meant more than he should have possession of the records of policies that have been written. Its purpose was to vest in him the good will of the business which he was about to build up and to undertake that the company could not interfere with

this business by soliciting renewals thereof in event of the termination of the agency without his fault."

The court stated that plaintiffs were entitled to recover whatever damages it could prove by the weight of the evidence they have sustained by the wrongful use of defendant or any of its agents, of the expirations belonging to plaintiffs at the termination of the contract.

It is interesting to note in the case of Woodruff v. Auto Owners Ins. Co., supra, wherein the custom under the American Agency System is followed, that damages are only recoverable for a malicious interference by the company with the agent's ownership and right to use the expirations. Under such rule, not considering the contractual obligation herein, it would seem the question of whether defendant's act in sending the aforesaid letters to the policyholders was a "malicious interference" with plaintiff's ownership and use of the records and expirations is for the jury. Such issue would depend on the circumstances surrounding the sending of the letter, such as the time when sent, its language, truthfulness of the statements which it contained and other factors from which the jury might infer malice. While plaintiff has not pleaded custom under the American Agency System, the decision in the Woodruff case does clearly explain the principle relating to ownership and use of records and expirations as understood in the trade and lays down a standard by which violations of this custom may be determined. It would seem that a contractual obligation between the parties as here would be even more inviolate than the aforesaid custom.

Defendant has cited the following Pennsylvania cases in support of his argument. None of these, however, determine the precise issue in the case at bar and are, therefore, distinguishable.

In Fidelity Casualty Company of N. Y. v. Dowing & Downing, 88 Pa. Superior Ct. 133, the action was in assumpsit for the recovery of insurance premiums withheld by the agent after termination of the contract. Defendant filed a counterclaim in which it claimed a proprietary interest in the business which it had procured for plaintiff and asked damages resulting from solicitation of its clients by plaintiff. The contract between the parties contained no provision that plaintiff would not renew policies at their expiration, or that defendant was entitled to commissions upon such renewal, nor did it contain a provision defining the ownership and use of the records and expirations. The court, in refusing to open judgment granted plaintiff for want of a sufficient affidavit of defense, in effect decided against defendant's counterclaim on what we have hereinbefore referred to as the strict agency rule, i.e., the ownership and use of the records and all information acquired by defendant during the agency were in plaintiff. The case at bar is distinguishable because it involves a contractual obligation between the parties which would supersede the general rules of agency.

In Massachusetts Bonding & Insurance Company v. Johnston and Harder, Inc., 348 Pa. 512, plaintiff, after termination without cause and in violation of its contract with defendant which provided for a 30 days' written notice, filed a bill in equity requesting an accounting of money in the possession of defendant. Defendant counterclaimed on the grounds the summary action of plaintiff terminating the contract was illegal and amounted to a confiscation of its business. In denying any relief for damages to the business assets and allowing only damages for the loss of profits during the 30-day period of notice defendant was entitled to, the court in effect stated that both

plaintiff and defendant could use the records and expirations information for renewal purposes. Here again the contract contained no provision defining the ownership and use of these records and expirations as between the parties and the case is therefore distinguishable on its facts. It is interesting to note that the Supreme Court seems to follow that interpretation of the American Agency System principle which permits use of these records by both the company and agent after termination of the contract. See Woodruff v. Auto Owners Insurance Company, supra.

The cases of Dodson v. New York Life Insurance Company, 36 Pa. Superior Ct. 551, and United States Casualty Company v. Parnell, 72 Pa. Superior Ct. 586, involve a determination of the agent's right after termination of the contract to renewal premiums on policies procured by him during its term. No such claim is made by plaintiff here and we therefore feel it unnecessary to discuss these cases which lend no help in deciding the issue.

In our opinion, paragraph 8 of the contract between defendant and plaintiff vests ownership of and a property right in the records and expirations acquired by plaintiff during the term of the contract. If defendant interferes with this property to the damage of plaintiff, there may be a recovery for breach of contract. We hold, therefore, the complaint states a good cause of action and the preliminary objections in the nature of a demurrer must be dismissed.

In the alternative the preliminary objections of defendant ask for a more specific complaint in regard to the damages sustained by plaintiff. We think this objection is well taken..

Plaintiff in his complaint avers that as a result of defendant's letter to the policyholders they have refused to permit him to write their insurance in a com-

pany he represented, thus damaging him in the amount of $10,000. While it is recognized in cases such as this, damages cannot be proved with exactness as in many assumpsit actions, the complaint should offer some reasonable basis for determining the lump sum claimed. In effect the damages claimed are for loss of prospective profits which may depend upon various conditions. Defendant is entitled to know, in order to prepare his answer and adequately defend, whether plaintiff intends to prove that defendant's alleged interference induced all the policyholders on record at the time of termination of the contract to refuse to renew their policies with him in another company, or only a certain percentage of these. It is quite likely that for reasons other than the alleged interference of defendant some of these may not have renewed their policies even though the contract was not terminated. If he intends to prove damages by showing the percentage of renewals each year during the term of the contract and a loss of all or a certain percentage of these renewals after the term of the contract, allegedly because of the interference of defendant, defendant is entitled to know this. There may be other methods in which the damages can be proven. Therefore, we believe plaintiff must state the basis of his calculation of damages, giving adequate information to which defendant may plead. The preliminary objections asking for a more specific complaint on damages sustained by plaintiff are sustained and we make the following

### Order

Now, June 25, 1958, after argument and consideration of the briefs, defendant's preliminary objections in the nature of demurrer are overruled and the preliminary objections asking for a more specific complaint on damages are sustained.

Plaintiff is directed to file an amended complaint in accordance with the above opinion within 20 days from the date hereof.