V. L. PHILLIPS & CO., Inc. et al. v. PENNSYLVANIA THRESHERMEN & FARMERS' MUT. CAS. INS. CO.

No. 6446.

United States Court of Appeals Fourth Circuit.

Argued June 30, 1952.

Decided Sept. 5, 1952.

Ashby B. Allen and George E. Allen, Richmond, Va. (Allen, Allen, Allen & Allen, Richmond, Va., on brief), for appellants.

Robert Lewis Young, Richmond, Va. (Walter E. Hoffman, Norfolk, Va., and John G. May, Jr., Richmond, Va., on brief), for appellee.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and HAYES, District Judge.

HAYES, District Judge.

The Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Company, desiring to enter the State of Virginia to carry on its Casualty Insurance business, entered into a written contract, on August 11, 1944, with V. Lance Phillips of Richmond, Va., as its Agent for the State of Virginia, excluding the counties of Accomac and Northampton. The Agent was engaged in insurance business as State Agent with other companies and the contract did not require him to promote this Company's business to the exclusion of others. Later, Phillips incorporated his business in the name of V. L. Phillips and Company, Incorporated, and on September 1, 1947 a like contract was entered into between the Company and V. Lance Phillips and V. L. Phillips & Co., Inc., in which both were referred to throughout the contract as Agent. Therefore, the contract is treated as one contract constituting the basis for the business carried on between them until June 23, 1950, at which time it was terminated by the defendant pursuant to a previous notice of termination given 90 days earlier in accordance with paragraph 16.

During the period the contract was in force, the plaintiffs selected, appointed and instructed and obtained licenses for 173 sub-agents[1] throughout the State, to procure insurance in the defendant Company. The expense was borne by plaintiffs except the Company reimbursed the $2.00 license fee. Each sub-agent had a written contract signed by the Company and plaintiffs authorizing him to deliver policies and to collect premiums; fixing the compensation on a commission basis, and providing that he would forward all evidence of insurance effected by him to plaintiffs and to remit to plaintiffs within 45 days all premiums collected.

The volume of business grew rapidly and at the termination of the contract the annual premiums amounted to approximately $1,250,000.00.

The plaintiffs sued the defendant for damages alleging that the defendant interfered with, and deprived plaintiffs of, the expirations on the business created by the plaintiffs. The defendant denied such interference as to any business written by plaintiffs individually and asserted that plaintiffs had no right to expirations on policies written by plaintiffs' sub-agents. The trial judge adopted the view of the defendant and entered a summary judgment dismissing the action except it allowed judgment for commissions on certain policies written by Clifton Insurance Agency before the termination of the contract. From this judgment the plaintiffs appealed.

It is contended by the plaintiffs that the custom and usage in the insurance field recognizes the property right of the agent to expirations on fire and casualty policies written by him and that the contract between the parties here specifically so provides, and plaintiffs insist that the expirations apply to all the policies in the territory whether written by them or their sub-agents.

"Expirations" in the insurance field has a definite and well recognized meaning; it embodies the records of an insurance agency by which the agent has available a copy of the policy issued to the insured or records containing the date of the insurance policy, the name of the insured, the date of its expiration, the amount of insurance, premiums, property covered and terms of insurance. This information enables the agent to contact the insured before the existing contract expires and arms him with the information essential to secure another policy and to present to the insured a solution for his insurance requirements. It has been determined that this information is of vital assistance to the agency in carrying on the insurance business and it has become, in the insurance field, recognized as a valuable asset in the nature of good will.

There is ample authority for the rule which is generally recognized that a fire or casualty insurance agent has a property right to the expirations on business produced by him. Kelly v. American Mine Owners' Casualty Corporation, 161 Va. 206,

---

1. Sub-agent is employed to differentiate between him and the Agent. However, the contract with the sub-agent uses only the word agent.

170 S.E. 580; Port Investment Co. v. Oregon Mutual Fire Insurance Company, 163 Or. 1, 94 P.2d 734, 124 A.L.R. 1342.

In our view it is unnecessary to dwell on the custom since we base our decision on the contract between the parties.

The executive Vice-president of the Company who negotiated the contract with plaintiff, in his affidavit in support of the motion for summary judgment, states that plaintiff requested the withdrawal of the defendant from the State of Virginia in the event of the termination of the proposed contract but defendant refused to do this and, in consequence of this, inserted the last sentence in paragraph 16.

"This Agreement may be terminated at any time at the pleasure of either party by giving a ninety (90) days notice to the other in writing, but any liability for monies received by the Agent shall not be discharged until all amounts are satisfactorily settled and paid by the Agent. In the event of the termination of this Agreement, the Agent not being in default and thereafter promptly accounting for and paying over balances not in default for which he may be liable, the Agent's record, use and control of the expirations shall be deemed the property of the Agent and left in his undisputed possession; otherwise the records, use and control of expirations shall be vested in the Company. Furthermore, upon termination of this Agreement, from any cause whatsoever, neither the Agent or his heirs, administrators, executors or assigns shall have any right to any commission upon, or remuneration from, the renewal of any policy or business previously written, which may be continued with the Company."

The expirations referred to in the preceding paragraph were intended to be, and beyond a doubt, were expirations on all business produced by the plaintiff or its sub-agents throughout the State of Virginia, excluding the two counties stated in the Contract. The Contract admits no other reasonable interpretation. The Contract recites: the area covered under the Contract was all of Virginia except two counties; sub-agents were contemplated under the Contract; the Agent shall account for, and remit promptly to the Company—all premiums on policies issued for him; any credit extended by the Agent shall be at his own risk and expense; stated commissions are payable "on all policies of insurance issued by or through the Agent, whether through brokers, sub-agents, or otherwise, while this Agreement is in effect;" "all accounting records of the Agency, which pertain to the business of the Company, shall be subject to inspection, at any time by the accredited representatives of the Company;" "The Agent shall account for all policies" and the "Company shall not be responsible for expense incurred by the Agent except for personal local license fees." (This fee was $2.00 for each sub-agent which was paid by plaintiffs and reimbursed by defendant.) Considering the Contract in its entirety, the conclusion is irresistible that the Agent to whom the Company looked was the plaintiffs who alone were accountable to defendant for all premiums on policies in force in the designated territory, whether written directly by plaintiffs or indirectly by local sub-agents whom plaintiffs selected; that if plaintiffs were not in default on any of these premiums when the Contract was terminated— and this applied to all insurance in force throughout the Agent's territory—then plaintiffs were entitled to the expirations on such insurance, otherwise they became the property of the Company. The Agent was not in default and we hold under the plain language of the Contract that the plaintiffs were the owners of all of the expirations and that the defendant had no right to them. Kerr & Elliott v. Green Mountain Mutual Fire Ins. Co., 111 Vt. 502, 18 A.2d 164.

The last sentence in paragraph 16 relates to commissions on policies renewed after the termination of the Contract and disposes of any right on the part of plaintiffs to commissions. For example, if an insured, for reasons personal to him, saw fit to renew his policy with defendant without solicitation by defendant, plaintiffs would have no right to commissions on such re-

newal. This sentence was intended to, and does, protect the defendant against claims for commissions, after the termination of the Contract, on policies renewed without solicitation by defendant. Northwestern Underwriters v. Hamilton, 8 Cir., 151 F.2d 389. This construction of paragraph 16 gives meaning to the property rights of plaintiffs to the expirations and safeguards defendant against claims for commissions on policies renewed after the termination of the Contract in those cases where plaintiffs' expirations have not been interfered with by defendant. We deem it unnecessary to discuss the law dealing with ambiguities and the general rule that they must be resolved against the party who drafted the Contract, Scott v. Goode, 152 Va. 827, 148 S.E. 689, nor to the construction which the parties have placed upon it in order to ascertain its meaning. Eppes v. Eppes, 169 Va. 778, 195 S.E. 694; Norfolk-Southern Bus Corporation v. Virginia Dare Transportation Co., 4 Cir., 159 F.2d 306.

The termination of the Contract under the facts not disputed here left plaintiffs still entitled to the commissions on premiums collected before the termination and with the undisputed ownership in the expirations on insurance effected by them under the Contract, whether personally or by their sub-agents.

■ The defendant had no right to solicit directly from the insured nor could it do so indirectly by appointing plaintiffs' former agents and thereby acquire through them the expirations and use them to the prejudice of plaintiffs. It is not clear how complete was the record of the sub-agent. While he was required to forward all evidence of insurance effected by him to the plaintiffs, we assume that the sub-agent retained the name of insured, the amount and premium and the expiration of each policy. The Company could not supply this information to a new agent and let him solicit the renewal nor could it do so itself without encroaching on the property right it gave to the plaintiffs under the Contract. On what reason then, could the Company do the same thing by re-appointing the former sub-agents who had enough information to enable them to appropriate plaintiffs' expirations?

The ingenuous argument of the defendant is to the effect that the sub-agent owned the expirations in business written by him and the Company could appoint him and use his knowledge without liability to the plaintiffs. We have already explained that by the Contract itself, as between plaintiffs and defendant, the plaintiffs acquired property rights in all expirations. It follows that the defendant could not use its own records to solicit those expirations nor can it secure the information from the former sub-agents and use it without answering in damages to plaintiffs. To allow the contention of defendant would result in its reaping where it did not sow and to unjustly enrich itself to the impoverishment of the plaintiffs. Impotent, indeed, would be the law if it were forced to grant to the defendant a fantastic right of subrogation to the rights of a former sub-agent in the expirations which the Company by solemn Contract granted to the plaintiffs. Defendant admits it appointed at least 90 of the former sub-agents in less than thirty days after the termination of the Contract and in this court it maintains that these agents had a perfect right to solicit business from their former customers.

■ The provision of the Contract that the "Agent's record, use and control of the expirations shall be deemed the property of the Agent and left in his undisputed possession" meant more than he should have possession of the records of policies that had been written. Its purpose was to vest in him the good will of the business which he was about to build up and to undertake that the Company would not interfere with this business by soliciting renewals thereof in the event of the termination of the agency without his fault. It has been held a violation of the provision for the company to solicit renewals of policies which had been written through the agent. Kerr & Elliott v. Green Mountain Mutual Ins. Co., 111 Vt. 502, 18 A.2d 264. And such violation would not be avoided by having solicitation made by another person. It is said that the sub-agent who wrote the policy has the records

of the business in his office and upon the expiration of the policy has the right to solicit the business for any company that he may happen to represent at the time. The answer is that the question here is not what the sub-agent may do, but what the company may do. The sub-agent would have no power to approach the policy holder in behalf of the company unless the company vests him with the power to do so; and the company should not thus cooperate with the sub-agent in doing what it has no right itself to do. When it does so, it violates its contract. It has no right in law, in equity, in good conscience or in common honesty, after making a contract of the sort made with the agent here, to take over his organization and through it appropriate to its own use the good will of his business as represented by the "expirations", which it has solemnly agreed should belong to him.

We are not holding that the defendant is liable for employing the former agents selected by plaintiffs. If those agents had not made use of the expirations on policies written before the termination of the Contract, no actionable wrong would have been committed by defendant; but neither the defendant nor the re-appointed agent nor a new agent had any right to use the expirations awarded to plaintiffs in their Contract with defendant. We express no opinion on the value of those expirations. That is a matter of proof. But we do hold that the plaintiffs are entitled to recover whatever amount of damages which the plaintiffs prove, by the greater weight of the evidence, they have sustained by the wrongful use by defendant or any of its agents of any of the expirations belonging to the plaintiffs at the termination of the contract. The cases cited by the able counsel for the defendant are clearly distinguishable from the instant case in that this case is controlled by the Contract between the parties.

The judgment entered in the court below is reversed and a new trial ordered in accordance with this opinion.

Reversed.