**Juliet G. BECKER, Executrix of the Will of Carl J. Becker, Deceased, Appellant,**

v.

**NAHM & TURNER, INC., Appellee.**

Court of Appeals of Kentucky.

Nov. 15, 1968.

Rehearing Denied Jan. 31, 1969.

Blakey Helm, Louisville, for appellant.

Ben T. Cooper, Mayer, Cooper & Kiel, Louisville, for appellee.

EDWARD P. HILL, Judge.

Carl J. Becker, now deceased, began this litigation to recover renewal premiums after his agency was rightfully terminated by appellees Nahm & Turner, insurance brokers. The circuit court, without a jury (apparently the parties were content with the trial of the case in chancery), denied recovery to plaintiff. This appeal followed.

Becker died during the pendency of his action, and it was revived in the name of his widow, the executrix under his will. Nahm & Turner was at first a partnership but later received a corporate charter, designated Nahm & Turner, Inc. We shall refer herein to the partnership in the plural.

Appellant presents two arguments: (1) that Becker is entitled to 15 percent commission on all renewal premiums paid after his discharge, and (2) that the trial court erred in overruling his motion to file an amended or "supplemental" complaint.

Appellees, in early 1954, were insurance brokers in Louisville, Kentucky, for Lloyds of London. About that time they entered into a verbal contract with Becker, an insurance agent, under which it was agreed that Becker would submit applications for group accident insurance. Two letters from the brokers to Becker confirmed in part their agreement. The letters were silent as to Becker's rights on termination of the agency.

Becker obtained applications for such insurance (most of which were accepted and policies issued thereon) until June 1959, when the brokers notified Becker his agency was terminated and he was discharged for failure to account for and pay to them premiums collected by him.

About the time of or shortly prior to the termination of Becker's agency, he, Becker, lost his license as an insurance agent and later was adjudged bankrupt. For over two years, Becker defaulted in his duty to turn over to the brokers premiums he collected, although the brokers advanced such premiums to the insurance company and later were able to get their money back through the collection of other premiums. This indulgence of the brokers did not require them to continue the practice on and on or estop them from later terminating the contract for this admittedly continuing misconduct.

Simultaneously with the notice to Becker of the termination of his contract by the brokers, they, the brokers, notified certain Becker policyholders that they would not renew Becker's policies, but would write new policies on request of the policyholders. The brokers advised the policyholders that they were free to buy their insurance elsewhere, but if they desired new policies, free of Becker, they, the brokers would write them.

Some policies written by Becker were renewed after the termination.

After hearings before a special commissioner, the trial court allowed Becker commission on those policies. that were renewed, in the amount of $447.38, but disallowed recovery to Becker on new policies issued after the termination of Becker's agency.

For reasons hereinafter pointed out we conclude Becker was not entitled to commissions on either classification of policies (whether new or renewed) after the termination of his agency contract. Appellee has not prosecuted a cross-appeal, so the allowance (by way of a credit on Becker's indebtedness to the brokers) of $447.38, representing 15 percent commission on policies written by Becker and renewed by the brokers after the termination of the contract, will not be disturbed.

The question is, what are the rights of an agent to commission or renewal premiums after the termination of his agency? Of course the answer depends on the facts. Of first importance is the contract itself. If the contract is silent or ambiguous, resort may be had to custom and usage in the business. 44 C.J.S. Insurance § 162c.

While the verbal contract as to commissions after the termination of Becker's agency contract is silent, there is little doubt but that the contract entitled Becker to 15 percent commission on all insurance policies he was instrumental in writing (on both original and renewal policies) up to the date of his discharge. This interpretation of their contract is arrived at by the action of the parties themselves. The brokers paid commission on all new and renewal policies up to the date the agency contract was terminated.

In the absence of a contract clearly defining the right of the agent to commission on renewals, it becomes important to consider the custom and standard practices in this particular business. The kind of insurance policy written is likewise important. The rule as to life policies, written without necessity of renewals, requiring no further service of the agent but only the payment of periodic premiums, may not apply to group accident policies where, as in the present case, the agent attends to renewals and has the duty to collect premiums (as was the case during a part of the period of Becker's agency) and attend to additions to group policies where new employees are added to group coverage.

We do not find, nor are we cited, a case in point from this jurisdiction in which this court has defined the right of an agent to commission on renewals after his agency contract has been terminated for cause. It would seem his right would also depend upon whether he had a vested right to renewals and upon the question whether or not he had done all required of him in connection with the particular policy before the termination of his agency.

The facts in the present case clearly indicate Becker was required to perform a continuing service or at least an annual service in the matter of renewals and in the matter of determining the number and classification of persons covered by the various group policies.

We find written in 29 Am.Jur., Insurance, § 179, the following:

"It is generally held that an insurance agent forfeits his right to renewal commissions if he is discharged for misconduct or other adequate cause. * * * A general insurance agent has no such vested right in renewal premiums as cannot be divested by a justifiable removal by the insurer because of a shortage in his accounts. However, under a particular contract an agent may be entitled to commissions on renewals after his discharge for cause, where the right to such renewals has been deemed to vest in the agent before his discharge."

The same rule is announced in 163 A.L.R., p. 1472, which we quote:

"The later cases, at least in so far as results reached are concerned, support the conclusion drawn in the earlier annotation that unless it is expressly so stipulated or clearly to be gathered from the agency contract, an insurance agent is not entitled to commission on renewal premiums received by the company after the termination of the agency."

See also 44 C.J.S. Insurance § 162c, p. 844, wherein it is said:

"Except to the extent that his contract provides for renewal commissions, an agent is not entitled to commissions on renewal premiums paid after a proper termination of his agency * * *."

A note in 29 Am.Jur., supra, cites Phoenix Mutual Life Insurance Co. v. Holloway, 51 Conn. 310, 50 Am.Rep. 20, which

holds that a life insurance agent forfeits his rights to commission on renewals after his discharge for cause. Holloway's contract provided only two conditions for its termination: (1) the sale of his agency, and (2) his death. Nevertheless, the Connecticut court held his discharge for cause forfeited his right to commission on renewals. The Holloway case involved straight life insurance. By citing this case we do not imply that this court would today take the same view in a case involving straight life insurance, although in the early case of Andrews v. Travelers' Ins. Co., 24 Ky.Law Rep. 844, 70 S.W. 43 (1902), this court applied the rule to life insurance.

Appellant relies upon Business Men's Assur. Co. of America v. Eades, 290 Ky. 553, 161 S.W.2d 920. Eades did all his contract required of him (training of other agents), for which the company agreed to pay seventy-five cents for each seven dollars of business done by the new salesmen trained by Eades. We do not consider the rule or conclusion reached in Eades as controlling or even helpful in the present case.

Appellant's contention that the trial court erred in refusing to allow him to file a "supplemental" complaint is not found to have merit. The attempted amendment did not materially change the issues or add an allegation entitling him to any great relief. It was intended possibly to conform to evidence in view of certain testimony given by appellee's witness Turner with respect to a change in the brokers' construction of the contract. The change referred to was in reality the termination by the brokers of Becker's contract, which we think was justified.

The fact that Becker lost his license required by KRS 304.516 in no way affected his right to renewals.

The judgment is affirmed.

All concur.