**FRED MILLER CO., Appellant,**

v.

**EMPIRE FIRE & MARINE INSUR-
ANCE CO., Appellee.**

No. 74–1187.

United States Court of Appeals,
Eighth Circuit.

Submitted June 14, 1974.

Decided Sept. 16, 1974.

L. R. Magee, Kansas City, Mo., for appellant.

William H. Sanders, Kansas City, Mo., for appellee.

Before GIBSON, Chief Judge, and BRIGHT, and WEBSTER, Circuit Judges.

GIBSON, Chief Judge.

This appeal presents an important question regarding the rights and liabilities of an insurance company and a general agent upon termination of a general agency agreement. This diversity suit was brought by Fred Miller Co. (Miller), a general agent, against Empire Fire & Marine Insurance Co. (Empire) to recover for an alleged interference with Miller's use and control of expirations[1] guaranteed him by the terms of the general agency agreement.[2]

The District Court, without objection of the parties and in order to spare them the unnecessary expense of a trial, ruled after a pretrial hearing that Miller could not make a submissible case under principles enunciated in Otto v. Imperial Casualty & Indemnity Co., 277 F.2d 889 (8th Cir. 1960) and entered final judgment for defendant. Miller brings this appeal.

Miller and Empire executed a general agents agreement October 6, 1960, which, except for amendments dealing with commission rates, remained in effect until Empire gave notice of termination July 26, 1972, effective 45 days after receipt. This termination was pursuant to a provision of the agreement which allowed either party to cancel without cause upon 45 days notice.

All of the insurance that Miller placed with Empire was referred to his agency by independent insurance agents.[3] These local agents would forward a particular insurance risk to Miller, who in turn would place it with Empire or an-

---

1. "Expirations" is a term with definite and well-recognized meaning in the insurance field.

> [I]t embodies the records of an insurance agency by which the agent has available a copy of the policy issued to the insured or records containing the date of the insurance policy, the name of the insured, the date of its expiration, the amount of insurance, premiums, property covered and terms of insurance. * * * It has been determined that this information is of vital assistance to the agency in carrying on the insurance business and it has become, in the insurance field, recognized as a valuable asset in the nature of good will.

V. L. Phillips & Co. v. Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co., 199 F.2d 244, 246 (4th Cir. 1952), cert. denied, 345 U.S. 906, 73 S.Ct. 645, 97 L.Ed. 1342 (1953); accord, Northwest Underwriters, Inc. v. Hamilton, 151 F.2d 389 (8th Cir. 1945); Kerr & Elliott v. Green Mountain Mut. Fire Ins. Co., 111 Vt 502, 18 A.2d 164 (1941).

2. Paragraph 16 of the General Agents Agreement between Miller and Empire provided:

> In the event of termination of the Agreement, the Agent having promptly accounted for any paid over premiums for which he may be held liable, the Agent's records, use and control of expirations shall remain the property of the Agent and be left in his undisputed possession; otherwise the records, use and control of expirations shall be vested in the Company.

3. We will refer to these independent insurance agents as local agents or subagents in this opinion. These local agents had no contractual duty to Miller and were free to place their business elsewhere. However, the evidence indicates that local agents wishing to place their business with Empire in Missouri or Kansas would have to broker it through Miller as Miller was Empire's only general agent in those two states. The relationship of these local agents to the general agent Miller is similar to that of a "subagent" as referred to in the cases discussed later in this opinion.

other of the insurance companies with which Miller had agency agreements.[4]

Thus there was in operation a four-tiered system. An insured would go to a local agent to obtain insurance for a particular risk. This local agent might in some instances place the insurance directly with an insurance company or broker the policy through a general agency like Miller. Miller, upon receiving an application from a local agent, would then place the insurance with one of the companies he represented. This four-tiered relationship becomes important to a later analysis of what rights, if any, were secured to Miller upon termination of the agency agreement.

The interference complained of occurred after termination of Miller's agency agreement. Empire in the fall of 1972 undertook a series of mailings to licensed insurance agents as listed in the Missouri Underwriters Handbook in Missouri soliciting them to become agents for Empire. Higher commissions than could be obtained by brokering their policies through a general agent and lines of insurance not previously available were offered. Miller claims the effect of this blanket mailed solicitation was to prevent the local agent from placing renewals of their policies with Miller.

Miller claims that this solicitation by Empire interfered with the undisputed possession of the use and control of expirations guaranteed him by paragraph 16 of the agency agreement upon termination. Empire contends that the person who owns and controls the expirations in question is not Miller but the local agent who brokered the business with plaintiff and thus there could be no interference by a direct solicitation of these agents. The District Court, in granting judgment for defendant on the basis of *Otto,* apparently agreed with Empire that Miller had no property right in the expirations or renewals of the insurance policies, and, therefore, even if there could be said to be an interference, it would not be actionable.

The question for our decision is whether *Otto* requires a conclusion that Miller has no property rights which were legally protected by the contract from company interference.[5] This interpretation of *Otto* is based upon our discussion in *Otto* of Woodruff v. Auto Owners Ins. Co., 300 Mich. 54, 1 N.W.2d 450 (1942). Therein we stated:

> There, as here, it was the sub-agent who owned the expirations, not the general agent who was apparently trying to collect for them. * * * We thus conclude that plaintiff had no ownership of or control of the Gordon business such as would entitle him to recover *in the circumstances here shown by the evidence.*

Otto v. Imperial Casualty & Indemnity Co., *supra,* 277 F.2d at 894–895 (emphasis supplied).[6]

It is important then in interpreting *Otto* to determine the circumstances shown by the evidence in that case. Otto was appointed an agent of Imperial Casualty in July, 1957. During the con-

---

4. Miller had agency agreements with or represented ten other insurance companies at the time Empire cancelled the general agency agreement.

5. The question of whether there has been an interference is not before us on this record. This would be a matter of proof at trial. We will assume, *arguendo,* that there has been an interference for purposes of deciding the legal issue of whether *Otto* required entry of judgment for defendant.

6. The court in *Otto* as an additional ground for its holding also pointed out that after the termination of the contract that the general agent through its representative indicated disinterest in renewals and "cooperated with defendant with reference to them and accordingly waived any complaint which plaintiff might have had for the claimed interferences therewith."

While plaintiff seeks to distinguish *Otto* on the ground of waiver, we feel this cannot be satisfactorily done in view of what might be termed the primary holding, that the general agent "had no ownership of or control of the Gordon business such as would entitle him to recover in the circumstances here shown by the evidence."

tinuance of the agreement and with the knowledge of Imperial the majority of the insurance written through Otto came from a G.E.M. store insurance counter operated by a subagent, Milton Gordon. Otto had no contract with Gordon requiring him to place this insurance through Otto. Imperial terminated Otto's agency agreement March 1, 1958. Sometime in March, 1958, Gordon approached Imperial and requested and received appointment as an agent. Otto then brought suit against Imperial alleging that Imperial "entered into a plan to purloin the 'block of business' generated by Plaintiff." The trial court granted a directed verdict and this was affirmed on appeal.

The facts in *Otto* were stated to be identical with Woodruff v. Auto Owners Ins. Co., *supra*. In *Woodruff*, an agent sued for an alleged interference with his rights in expirations after termination of his agency by the defendant company. Plaintiff received a $5,000 jury verdict but this was reversed and judgment entered for defendant on appeal. In *Woodruff*, a Mr. Keyser solicited business in defendant company for Woodruff's agency. After termination of the agency, Keyser requested and received appointment as one of defendant's agents. This was determined not to be a malicious interference by the company with any of plaintiff's rights. The court noted that to make a case for the jury "there must be competent testimony tending to prove that defendant maliciously interfered with plaintiff's property rights in his expirations or expiration data." *Woodruff, supra* at 457. In discussing the extent of plaintiff's rights the court noted:

> We think it is clear that the full purpose of and the need for the application of the custom established by the American Agency System is that the so-called clientele or established business of an insurance agent may be preserved to him as far as possible upon the termination of his agency. To this extent, and no further, the custom should be respected and en-

forced. * * * [T]he insurer is only denied what would otherwise be legitimate in the way of attempting to appropriate to itself or some other of its agents the business which under the established custom belongs to the agent with whom the principal has severed its relations.

Woodruff v. Auto Owners Ins. Co., *supra*, 1 N.W.2d at 453.

■ The court in *Woodruff*, as was this court in *Otto*, was impressed by the fact that the expirations there in question were actually a *property right of* the subagent and not the agent recently terminated. This same situation is admittedly true in the present case. However, to recognize this does not require a conclusion that the terminated agent has no right in the expirations, nor does *Otto* or *Woodruff* appear to go this far. It is important to place the rights involved in the insurance field within perspective. Paramount of course are the rights of the insured. No matter who, as a matter of custom or contract, may be considered to own the expirations to a given policy, it is always open to the insured to place his business with whomever he pleases. *But cf.* Kerr & Elliott v. Green Mountain Mut. Fire Ins. Co., 111 Vt. 502, 18 A.2d 164 (1941). Thus, even though a subagent or local agent may be considered owner of the expiration, the insured may bypass the subagent or local agent and go directly to the general agent or the company and assert his unwillingness to purchase through the subagent. A renewal of the policy in these circumstances will not be considered an interference with expirations. Northwest Underwriters, Inc. v. Hamilton, 151 F.2d 389, 392 (8th Cir. 1945). But this is no support for the converse of that proposition, that a general agent or the company may bypass the subagent or local agent and go directly to the insured on their own initiative.

■ Next within the structure of the insurance field is the agent who deals directly with the insured. This agent

may be a general agent in some instances, or like the present case a local agent who brokers the insured's business through a general agent with a particular insurance company. Unless otherwise modified by contract, this agent is considered to own the expiration in a particular insured's business. Otto v. Imperial Casualty & Indemnity Co., *supra*; Woodruff v. Auto Owners Ins. Co., *supra*. This ownership and control of expirations is a protection of the work product of the individual agent and in this ownership and control he is protected from any interference with his relationship to the insured by the insurance company, or in a situation like the present case, a general agent through which he brokered the policy.[7] Woodruff v. Auto Owners Ins. Co., *supra*; Kerr & Elliott v. Green Mountain Mut. Fire Ins. Co., *supra*; 16A J. Appleman, Insurance Law and Practice, § 9025 at 179–80 (1968). However, as we noted previously, he is not protected against acts of the insured which may defeat his ownership and control of the expirations.

■■ Apart from this pattern of the industry which can be considered a three-tier system where there is the insured and his agent who deals directly with the insurance company, there exists a pattern personified in the present case where a fourth party is inserted between the company and the insured's agent. A general agent such as Miller who places policies with a company on behalf of a local agent has no contact with the insured and therefore is not customarily considered to own or control the expirations in a particular policy. This, however, is only valid when determining his relationship with the local agent, and even then can be modified by contract. 16A J. Appleman, Insurance Law & Practice, § 9025 at 182 (1968). There appears no reason why, as between the general agent and the company, the general agent could not be considered to own and control the expirations, as the purpose of an agent being considered owner of the expirations is to protect his business relationship with his clientele from appropriation by someone higher up in the tiers. This is especially true when, as here, the contract between the parties provides for just that conclusion.

Miller and amicus curiae [8] argue that the customs embodied in the American Agency System establish these expirations as the exclusive property of the general agent, in relationship to the company, and afford him protection against interference by the insurance company. However, as we noted in *Otto*, whatever protection Miller has against interference is governed by the terms of the contract between the two parties,[9] and the contract provides for exactly what the American Agency System provides, "that the agent shall have full and exclusive ownership of business which he generates." Otto v. Imperial Casualty & Indemnity Co., *supra*, 277 F. 2d at 891.

We have previously noted that the ownership and control of expirations serves to protect the business relationship between a subagent or local agent and his clientele, the insureds, from in-

---

7. The American Agency System can be seen as giving an agent in the tier below the insurance company or a general agent a limited right of protection or freedom from interference with his course of business dealings or the expirations of particular policies by other parties in privity to the insurance policy.

8. The American Association of Managing General Agents filed a brief amicus curiae supporting Miller's position in this appeal.

9. While the provisions of the contract are unambiguous and clear and evidence of custom is not required for their construction, evidence of the custom known as the American Agency System is valuable in showing how the contractual right to expirations applies to parties not signatory to the agreement. The contract merely places in written form the American Agency System as between the parties to the contract and does not answer the question of how the contracting parties are bound to other parties who are not parties to the contract.

terference by the insurance company or the general agent. The clientele of a general agent who writes insurance brokered to him from subagents is not the insureds but rather the subagents. Should this leave the general agent without any protection against acts of the insurance company which could destroy this existing business relationship? We think not.

■ The provisions of paragraph 16 are clear and unambiguous and do not support defendant's argument that the expirations in question are the property of the subagents and not Miller. While the subagent's rights to the expirations are superior to the rights of the general agent, it does not follow that as between the company and the general agent the latter has no enforceable rights in the expirations. As a matter of contract between the parties, Empire has agreed to treat the expirations as Miller's property upon termination of his agency. We find no authority for treating this contractual language to apply only to business which Miller should happen to write directly for an insured. We think that just as the insurance company is barred from appropriating the benefits of an insured-agent relationship in the absence of agreement to the contrary, it may also be barred from appropriating the work product of its general agents upon termination. In a three-tier system the company only comes into possession of the records of an individual policy through the efforts of its agent. By custom or contract these records are reserved to the agent upon termination. In a four-tier system the company comes into possession of the records through the efforts of its general agent. We think the clear meaning of paragraph 16 of the Agency Agreement is to guarantee the general agent the use and control of those records free from interference by the company. This provision does not and cannot determine the ownership or control of expirations between Miller and the subagents, but "the question here is not what the sub-agent may do, but what the company may do." V. L.

Phillips & Co. v. Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co., 199 F.2d 244, 249 (4th Cir. 1952), cert. denied, 345 U.S. 906, 73 S.Ct. 645, 97 L. Ed. 1342 (1953).

The extent of the protection afforded Miller must next be determined. Just as a subagent is not protected against acts of the insured which may defeat his ownership and control of expirations, Northwest Underwriters, Inc. v. Hamilton, *supra*, we view *Otto* and *Woodruff* as holding that a general agent, such as Miller, is not protected against the acts of an independent subagent which may defeat the expiration rights the general agent has in relationship to the insurance company. For in such a situation, the act the general agent is complaining about is that of the subagent who has a superior right to the control of expirations. Thus a subagent may bypass the general agent, if not contractually bound, and go directly to the insurance company and request appointment as an agent without creating liability on the part of the insurance company or himself for an interference with protected rights of the general agent. As we stated in Northwest Underwriters, Inc. v. Hamilton, *supra*, 151 F.2d at 392:

> Manifestly, if plaintiff was unable to control the re-writing of the insurance policies at their expiration, he lost nothing because of the act of defendant in writing the insurance direct.

This rationale we think equally applicable to the relationship between a general agent and subagent unless otherwise modified by contract.

However, we think the rule is different where the acts complained of as an interference are not that of a subagent bypassing the general agent in his dealing with the company, but rather are deliberate acts of the insurance company which defeat the general agent's use and control of expirations which the company has agreed to leave in the undisputed possession of the general agent. The insurance company's undertaking to leave these records in the undisputed possession of the general agent must be

considered as an agreement to make no interference with the former general agent's attempt to obtain a transfer of the policies previously written through the former company.

This contract provision provides an agent with the knowledge that even if his agency with a particular company is terminated, he will have the opportunity to attempt to place renewals of those policies with another insurance company, assuring him of some business continuity. Such protection also serves a business purpose for the insurance company, for without this assurance it is unlikely an agent would devote time and expense to developing business in that particular company with the knowledge that once developed the renewals might be appropriated with impunity by the company.

We think the agency agreement in this case must be considered to guarantee Miller the opportunity to place renewals on the policies previously written with Empire with some other company without interference from Empire. The ability to do this would, of course, be contingent on the desires of the independent subagents who may or may not wish to renew the business through Miller and, of course, the insured, but we think Miller would be protected in his efforts from any interference by Empire which deprives him of this opportunity.

■ It is alleged the Empire directly solicited the brokers previously writing policies through Miller. There is a factual dispute as to the solicitation and its effect. But we think that if Miller does prove a solicitation of subagents previously dealing with him and that the actual effect was to deprive him of the opportunity to attempt to place these renewals with another company a submissible case on liability would be made for the jury to consider. Testimony of inconvenience, annoyance and loss of business is not enough.

Instead there must be competent testimony tending to prove that defendant maliciously interfered with plaintiff's property rights in his expirations or

expiration data. * * * In reaching this conclusion we are also mindful that direct evidence of malice is not essential; but "a malicious motive or intent will be presumed or implied in law from the intentional commission of a wrongful act which causes injury to another." (citation omitted).

Woodruff v. Auto Owners Ins. Co., *supra*, 1 N.W.2d at 457–458.

Authority for the conclusion that an interference as alleged in the present case may be actionable is found in V. L. Phillips & Co. v. Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co., *supra*. In *Phillips* a contract provision on termination provided that "the Agent's record, use and control of the expirations shall be deemed the property of the Agent and left in his undisputed possession * * *." In interpreting this language the court said:

[W]e hold . . . that the plaintiffs [general agent] were the owners of all the expirations and that defendant [insurance company] had no right to them.

V. L. Phillips & Co. v. Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co., *supra*, 199 F.2d at 247.

Phillips had been appointed agent for the company for the state of Virginia, except two designated counties. During the time of his agency he procured 173 subagents to sell insurance in the defendant company. After termination the company appointed at least 90 of these former subagents less than 30 days after termination of the agency. These subagents had a written contract with the plaintiff, signed also by defendant company, which provided that all evidence of insurance was to be forwarded to plaintiff; but contrary to the suggestion of Empire, this contract apparently did not provide that as between the subagents and plaintiff the expirations would become property of the plaintiff. The American Agency System apparently governed the ownership of the expiration rights between plaintiff and his

subagents. Further, that this would have been immaterial to the court's analysis appears from the following:

> It is said that the sub-agent who wrote the policy has the records of the business in his office and upon the expiration of the policy has the right to solicit the business for any company that he may happen to represent at the time. The answer is that the question here is not what the sub-agent may do, but what the company may do. The sub-agent would have no power to approach the policy holder in behalf of the company unless the company vests him with the power to do so; and the company should not thus cooperate with the sub-agent in doing what it has no right itself to do. When it does so, it violates its contract.

V. L. Phillips & Co. v. Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co., *supra* at 248.

In further answer to Empire's contention that Miller has no rights since the expirations belonged to the subagent, the court in *Phillips* stated in regard to this same argument advanced by the defendant company therein:

> The ingenious argument of the defendant is to the effect that the sub-agent owned the expirations in business written by him and the Company could appoint him and use his knowledge without liability to the plaintiffs. We have already explained *that by the Contract itself, as between plaintiffs and defendant*, the plaintiff acquired property rights in all expirations. It follows that the defendant could not use its own records to solicit those expirations nor can it secure the information from the former sub-agents and use it without answering in damages to the plaintiff. (Emphasis added.)

V. L. Phillips & Co. v. Pennsylvania Threshermen & Farmers' Mutual Cas. Ins. Co., *supra* at 248.

We, therefore, hold that in the circumstances here disclosed, that is, when an insurance company performs acts which are alleged to interfere with rights to expirations guaranteed the agent by terms of the agency agreement, Otto v. Imperial Casualty & Indemnity Co., *supra*, does not require a determination that no submissible case regarding liability can be made. We think that the applicable language of the agency agreement represents the undertaking of Empire that upon termination it will not take any actions that interfere with Miller's right to attempt to effect renewals of the affected policies with another company, and upon a breach of that agreement Empire would be liable for the injury sustained.

As the record developed below was concerned only with the question of whether our prior decision in *Otto* required the conclusion that plaintiff could not make a submissible case, we can only determine that plaintiff does have rights in expirations protected against interference by the insurance company. Whether in this case there was actually an unlawful interference with those rights by Empire is a matter appropriately left for resolution in the trial court.

We reverse the judgment of the District Court and remand the cause for further proceedings consistent with this opinion.